UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAJID FAIZYAN,<br><br>                                    Petitioner,<br><br>v.<br><br>JEREMY CASEY, Warden at Imperial Regional Detention Center, Imperial, California, et al.,<br><br>                                    Respondents. | Case No.:  3:25-cv-02884-RBM-JLB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[Doc. 1]** |

Pending before the Court is Petitioner Majid Faizyan's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 challenging the lawfulness of his detention by the United States Department of Homeland Security ("DHS").  (Doc. 1.)  For the reasons set forth below, the Court **GRANTS** the Petition.

## I.    BACKGROUND

**A.    Factual Background**

Petitioner is a 50-year-old Afghan citizen of the Tajek minority ethnic group and the Shia minority religious group.  (*Id.* at 3.)[1]  His life, along with the lives of his spouse and two children, were in danger in Afghanistan because of Petitioner's religion, ethnicity, political opinion, and cooperation with Americans.  (*Id.*)  The Taliban harmed and

---

[1]  The Court cites the CM/ECF electronic pagination for filings unless otherwise noted.

threatened Petitioner for all these reasons, and continued to direct threats of violence at him even after he fled Afghanistan.  (*Id.*)

Petitioner entered the United States with his family on November 30, 2023, intending to apply for asylum, withholding of removal, and protection under the Convention Against Torture.  (*Id.*)  He "entered the United States at or near Tecate, California without being admitted, paroled, or inspected." (Doc. 6 at 2.)  On December 2, 2023, he was issued a Notice to Appear, charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present who had not been admitted or paroled.  (*Id.*) Petitioner was released pursuant to an Order of Release on Recognizance[2] "[i]n accordance with section 236 of the Immigration and Nationality Act" ("INA")," codified at 8 U.S.C. § 1226.  (*Id.* (citing Doc. 6-1 at 13).)

Petitioner has since "lived for almost two years in the United States and he and his family were adjusting very well in the United States, with the help of his community support.  He has had no encounters with the immigration system nor the criminal justice system." (Doc. 1 at 4.)  On October 14, 2025, following Petitioner's individual merits hearing, an immigration judge denied all relief and ordered Petitioner removed.  (*Id.*; Doc. 6-1 at 15–16.)  Petitioner's appeal of the immigration judge's decision before the Board of Immigration Appeals ("BIA") is currently pending.  (Doc. 1 at 4.)  The next day, Immigration and Customs Enforcement ("ICE") detained Petitioner when he attended his ICE check-in pursuant to the terms of his conditional release.  (*Id.* at 4–5.)  On October 16, 2025, Petitioner was served with a Form I-200 Warrant for Arrest under INA § 236.  (Doc. 6-1 at 20.)  Petitioner is currently detained at the Imperial Regional Detention Center, his wife and 11-year-old child are detained at a facility in Texas, and his 18-year-old child is

---

[2]  8 U.S.C. § 1226(a) "provides that immigration officers may, in their discretion, detain noncitizens or may release them on conditional parole (also called an Order of Release on Recognizance, or 'OREC'")."  *Ledesma Gonzalez v. Bostock*, CASE NO. 2:25-cv-01404-JNW-GJL, 2025 WL 2841574, at *3 (W.D. Wash. Oct. 7, 2025).  This opinion uses the terms "conditional parole" and "release on recognizance" interchangeably.

detained at Adelanto Detention Center.  (Doc. 1 at 4–5.)  Petitioner has not been provided a custody redetermination review by an immigration judge.  (*Id.* at 5.)

Petitioner also has a history of coronary artery disease, has undergone surgical procedures for valvopathy, and was advised by doctors that he required a coronary CT angiogram.  (*Id.* at 3–4.)  This test had not been completed before Petitioner was detained.  (*Id.*)  Petitioner was also being treated, and taking medications for, anxiety, tension, and depressed mood.  (*Id.* at 4.)  Since being detained, Petitioner has been refused medication and treatment for these conditions.  (*Id.*)

**B.    Procedural Background**

Petitioner filed his Petition on October 26, 2025.  (Doc. 1.)  On October 28, 2025, the Court set a briefing schedule.  (Doc. 2.)  Respondents filed a Return in Opposition to Habeas Petition ("Response") (Doc. 6) on November 7, 2025, and Petitioner filed a Traverse Supporting Petition for Writ of Habeas Corpus ("Reply") (Doc. 8) on November 9, 2025.

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."  28 U.S.C. § 2241(a).  The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  *Id.* § 2241(c)(3).

## III.    DISCUSSION

Petitioner argues that the Petition should be granted because DHS detained him without a bond hearing in violation of: (1) the Fifth Amendment's Due Process Clause; (2) 8 U.S.C. § 1226; and (3) the Administrative Procedure Act ("APA").  (Doc. 1 at 2, 12–

3

28.)  Respondents argue that Petitioner is: (1) jurisdictionally barred from bringing his claims under 8 U.S.C. § 1252(g) and § 1252(b)(9); (2) barred from bringing his claims for failing to exhaust administrative remedies; and (3) legally detained under the mandatory detention provisions of 8 U.S.C. § 1225(b)(2).  (Doc. 6 at 6–16.)

The Court finds that it has jurisdiction over Petitioner's claims because the Petition challenges the legality of Petitioner's ongoing detention rather than the decision to commence removal proceedings or any act to adjudicate or execute a removal order.  The Court also finds that Petitioner is subject to the discretionary detention procedures under 8 U.S.C. § 1226 and his detention without a bond hearing violates the Due Process Clause.

**A.    Jurisdiction**

As the Court has an obligation "to determine that [it has] jurisdiction before proceeding to the merits" of any case, it will first address Respondents' jurisdictional argument.  *Lance v. Coffman*, 549 U.S. 437, 439 (2007); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).  For the reasons set forth below, the Court finds that it has jurisdiction over Petitioner's claims.

Respondents argue first that the Court lacks jurisdiction to hear this Petition under 8 U.S.C. § 1252(g).  (Doc. 6 at 6–8.)  This statutory bar against judicial review precludes the Court from exercising jurisdiction over the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]." 8 U.S.C § 1252(g).  The Supreme Court has narrowly interpreted § 1252(g) as applying "only to [those] three discrete actions that the Attorney General may take." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis omitted) (quoting 8 U.S.C. § 1252(g)).

Petitioner does not challenge the decision to commence removal proceedings or any act to execute a removal order.  Rather, he challenges "his re-detention without a pre-deprivation notice and hearing and showing of materially changed circumstances" and Respondents' "denial of his release from immigration custody on the purported basis that Petitioner is subject to mandatory detention."  (Doc. 7 at 3.)  He is thus enforcing his

4

"constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, Case No.: 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *4 (S.D. Cal. Sept. 3, 2025) (emphasis in original); *see Chavez v. Noem*, --- F. Supp. 3d ---, 2025 WL 2730228, at *3 (S.D. Cal. 2025) (finding the same); *United States v. Hovespian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (noting a "district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question . . . forms the backdrop against which the Attorney General later will exercise discretionary authority"). Therefore, § 1252(g) does not strip the Court of jurisdiction.

Respondents argue second that Petitioner's claims "necessarily arise" from the Attorney General's decision to commence removal proceedings against him. (Doc. 6 at 7.) This interpretation of 8 U.S.C. § 1252(g) would "eliminate judicial review of immigration [detainees'] claims of unlawful detention . . . inconsistent with *Jennings v. Rodriguez* and the history of judicial review of the detention of noncitizens under 28 U.S.C. § 2241." *Sanchez v. LaRose*, Case No.: 25-cv-2396-JES-MMP, 2025 WL 2770629, at *2 (S.D. Cal. Sept. 26, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)); *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022)). Accordingly, as other courts in this District have found in similar cases, the Court has jurisdiction to hear Petitioner's claims that his detention is unlawful under 28 U.S.C. § 2241. *See Sanchez*, 2025 WL 2770629, at *2; *Rokhfirooz v. LaRose*, Case No.: 25-cv-2053-RSH-VET, 2025 WL 2646165 (S.D. Cal. Sept. 15, 2025).

Respondents argue third that 8 U.S.C. § 1252(b)(9) bars judicial review of Petitioner's claims because Petitioner is challenging the basis upon which he is detained, and the exclusive means of judicial review of such claims is a petition for review to a court of appeals. (Doc. 6 at 8–10 (citing *Reno*, 525 U.S. at 483).) Section 1252(b)(9) provides that judicial review of "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall

5

be available only in judicial review of a final order under this section."

Section 1252(b)(9) was "intended to 'channel judicial review over final orders of removal to the courts of appeals,' not 'foreclose *all* judicial review of agency actions' touching on deportation proceedings writ large." *Salvador v. Bondi*, Case No. 2:25-cv-07946-MRA-MAA, 2025 WL 2995055, at *4 (C.D. Cal. Sept. 2, 2025) (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis in original)). The Supreme Court has "explained that practically any question of fact or law related to immigration detention technically 'aris[es] from' actions taken to remove a noncitizen 'in the sense that the [noncitizen's] injuries would never have occurred if they had not been placed in detention.'" *Salvador*, 2025 WL 2995055, at *4 (quoting *Jennings*, 583 U.S. at 293). But "cramming judicial review of those questions into the review of final removal orders would be absurd." *Jennings*, 583 U.S. at 293. In rejecting such an expansive interpretation of § 1252(b)(9), the *Jennings* court reasoned:

> Interpreting 'arising from' in this extreme way would . . . make claims of [unlawful] detention effectively unreviewable. By the time a final order of removal was eventually entered, the allegedly [unlawful] detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review.

*Id.* at 293.

This logic applies equally here. As discussed above, Petitioner challenges the legality of his continued detention rather than a final order of removal. Accordingly, the Court finds that § 1252(b)(9) does not strip this Court of jurisdiction. *See Salvador*, 2025 WL 2995055, at *5 (rejecting similar argument under § 1252(b)(9)); *Noori v. Larose*, Case No.: 25-cv-1824-GPC-MSB, 2025 WL 2800149, at 7 (S.D. Cal. Oct. 1, 2025) (same).

## B.   Exhaustion

Respondents also argue the Court "should deny the Petition for failure to exhaust administrative remedies." (Doc. 6 at 10 n.1.) "Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004).

Although 28 U.S.C. § 2241 "does not specifically require petitions to exhaust direct appeals before filing petitions for habeas corpus," the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001) (cleaned up).  The Court "may waive the prudential exhaustion requirement if administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (cleaned up).

"The Court, following other courts in this District, finds that exhaustion would be futile because the [BIA] is obligated to apply the binding precedent of *Matter of Yahure Hurtado*, 29 I & N. Dec. 216 (BIA 2025) to find that detention is mandatory under 8 U.S.C. § 1225(b)(2)." *Esquivel-Ipina v. LaRose*, Case No.: 25-CV-2672 JLS (BLM), 2025 WL 2998361, at *3–4 (S.D. Cal. Oct. 24, 2025); *see also Garcia*, 2025 WL 2549431, at *4–5 (same); *Chavez*, 2025 WL 2730228, at *3–4 (same).

## C.   Mandatory or Discretionary Detention

The statutory provision governing Petitioner's detention determines what procedures Respondents must follow.  Under 8 U.S.C. § 1225(b)(2), noncitizens are subject to mandatory detention without eligibility for bond.  "Under § 1226(a), noncitizens are entitled to a bond hearing before an immigration judge to determine whether they pose a flight risk or danger to the community." *Ledesma Gonzalez*, 2025 WL 2481574, at *2; *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 951 (9th Cir. 2008) (holding that "§ 1226(a) must be construed as *requiring* the Attorney General to provide the [noncitizen] with such a hearing"), *abrogation on other grounds recognized by Avilez v. Garland*, 69 F.4th 525, 535 (9th Cir. 2023).  For the reasons set forth below, the Court finds that Petitioner is subject to the procedures set forth in § 1226(a).

/ / /

/ / /

### 1.    Mandatory Detention Under § 1225

Section 1225 applies to noncitizens who are "applicants for admission." An applicant for admission is a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted.'" *Jennings*, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(1)). All applicants for admission "shall be inspected by immigration officers" to assess whether they may be admitted. 8 U.S.C. § 1225(a)(3). "[I]f the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] shall be detained." § 1225(b)(2)(A). Other than for a limited exception under 8 U.S.C. § 1182(d)(5)(A) for parole "for urgent humanitarian reasons or significant public benefit," which is not implicated here, detention under § 1225(b)(2) is mandatory. *Sequen v. Albarran*, --- F. Supp. 3d ---, 2025 WL 2935630, at *1 (N.D. Cal. 2025) (noting that "noncitizens subject to 1225(b)(2) . . . are subject to mandatory detention while their full removal proceedings are pending") (internal citation omitted).

### 2.    Discretionary Detention Under § 1226

Section 1226 applies to noncitizens who are "detained pending a decision on whether the [noncitizen] is to be removed from the United States." Section 1226 affords the government significant discretion; so long as the detained noncitizen is not covered by § 1226(c)—which requires mandatory detention for noncitizens who have been charged with certain crimes—the Attorney General may release the noncitizen on "bond" or "conditional parole." 8 U.S.C. § 1226(a)(1)–(2). Such release is proper where the noncitizen "satisfies [the government] that [he] will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." § 1226(a)(4). If a noncitizen wishes to contest the initial custody determination, the denial or amount of bond, he has a right to do so before an immigration judge. 8 C.F.R. § 1236.1(d)(1).

### 3.    Petitioner is Subject to § 1226

The Court finds that § 1226 governs here because: "(1) DHS has consistently treated [Petitioner] as subject to detention on a *discretionary* basis under § 1226(a);" and "(2) a

3:25-cv-02884-RBM-JLB

proper understanding of the relevant statutes, in light of their plain text, overall structure, and . . . case law interpreting them, compels the conclusion that § 1225's provisions for mandatory detention of noncitizens 'seeking admission' [do] not apply to someone like [Petitioner]," who has been residing in the United States for two years. *See Lopez Benitez v. Francis*, --- F. Supp. 3d ---, 2025 WL 2371588, at *3 (S.D.N.Y. 2025) (emphasis in original).

First, Respondents' own exhibits establish that Petitioner was detained pursuant to Respondents' discretionary authority under § 1226. The December 2, 2023 Order of Release on Recognizance (Doc. 6-1 at 13) and the October 16, 2025 Form I-200 Warrant for Arrest (Doc. 6-1 at 20) were issued pursuant to § 236 of the INA, which is codified at 8 U.S.C. § 1226. *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115–16 (9th Cir. 2007) (holding that a noncitizen released on an "Order of Release on Recognizance" pursuant to INA § 236 "was conditionally paroled under the authority of § 1226(a)"); *Lopez Benitez*, 2025 WL 2371588, at *4 (noting that "[r]elease on recognizance . . . is a form of conditional parole from detention, authorized under § 1226"); *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215 (D. Mass. 2025) (explaining that "Petitioner's Order of Release does not indicate that she was examined or detained under section 1225 but instead explicitly premises her release on section 1226 ('[i]n accordance with section 236 of the Immigration and Nationality Act'")) (quoting 8 U.S.C. § 1226). Thus, "the detention authority consistently applied by the government to [Petitioner] since [his] arrival in the United States has always been § 1226." *Salcedo Aceros v. Kaiser*, Case No. 25-cv-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025).

Second, the statutory text—and its interpretation by the great weight of district courts to have considered it[3]—establishes that Petitioner was detained under § 1226.

---

[3]    *See Quispe v. Crawford*, Civil Action No. 1:25-cv-1471-AJT-LRV, 2025 WL 2783799, at *6 (E.D. Va. Sept. 29, 2025) ("Petitioner's detention is governed by § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures, as

9

Section 1225(b)(2)(A) states: "in the case of [a noncitizen] who is an applicant for admission, if the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] shall be detained for a proceeding under section 1229a of this title." Thus, for § 1225(b)(2)(A) to apply, a noncitizen must be: "(1) an applicant for admission; (2) seeking admission; and (3) not clearly and beyond a doubt entitled to be admitted." *Martinez*, 792 F. Supp. 3d at 214.

The *Rodriguez* court extensively analyzed which statute governs noncitizens in circumstances like Petitioner's. 2025 WL 2782499, at *16–24. It held that noncitizens who entered the United States without inspection but have been "residing in the United States" and were "not apprehended upon arrival" are governed by § 1226's discretionary detention procedures. *Id.* at 16–17, 19, 21. The court reasoned that § 1225(b)(2) requires that the noncitizen be "seeking admission," language that "necessarily implies some sort of present-tense action." *Id.* at 22 (citing *Al Otro Lado v. Wolf*, 952 F.3d 999, 1011 (9th Cir. 2020) (finding that the phrase "*arriving* in the United States" and its "use of the present progressive, like use of the present participle . . . denotes an ongoing process") (emphasis in original)).

This Court finds the reasoning in *Rodriguez* persuasive and adopts it here. Petitioner had been residing in the United States for nearly two years at the time of his arrest in October 2025. (Doc. 6 at 2.) He was not apprehended upon arrival or at the border; rather, he was arrested while appearing for a routine ICE check-in (Doc. 1 at 4–5)—"an act of

---

at least thirty federal district courts around the country . . . have concluded when faced with habeas petitions from comparably situated petitioners."); *Rodriguez v. Bostock*, --- F. Supp. 3d ---, 2025 WL 2782499, at *1 n.3 (W.D. Wash. Sept. 30, 2025) ("conclud[ing] that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice" and collecting over 20 cases). *But see Chavez*, 2025 WL 2730228, at *5 ("Heeding the plain language of the statute also does not contradict or render superfluous § 1226" nor "the addition of § 1226(c) by the [Laken Riley] Act. . . .").

compliance, not an attempt to gain admission." *Ledesma Gonzalez*, 2025 WL 2841574, at *3.  Therefore, he was not "seeking admission" at that time, and his detention falls under § 1226's discretionary detention procedures.  *Accord Martinez*, 792 F. Supp. 3d at 223 (concluding that because the petitioner had already been residing in the United States for years when she was detained, "Section 1225(b)(2)(A) . . . simply had no application to her case"); *Oliveros v. Kaiser*, Case No. 25-cv-07117-BLF, 2025 WL 2677125, at *4 (N.D. Cal. Sept. 18, 2025) (concluding that § 1225(b)(2) "does not apply to noncitizens who have been released by DHS on their own recognizance into the interior of the United States").

**D.    Due Process**

Petitioner argues that, because his detention is governed by § 1226, his re-arrest and the revocation of his conditional parole without a bond hearing violate the Due Process Clause.  (Doc. 1 at 26–27; Doc. 7 at 10–11.)  Respondents argue that "ICE has statutory and regulatory authority to revoke its parole decisions" and that "[n]o Immigration Court or hearing is required for revocation under that authority."[4]  (Doc. 6 at 14.)

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  U.S. Const. amend. V.  "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas*, 533 U.S. at 693.  To determine

---

[4]  But "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citing *Romero v. Kaiser*, Case No. 22-cv-02508-TSH, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts . . . facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention.")); *see Padilla v. U.S. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals.")

which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). The Court must consider: (1) "the private interest that will be affected by the official action;" (2) the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

All three factors support a finding that Respondents' revocation of Petitioner's conditional parole without an opportunity to be heard deprived Petitioner of his due process rights. First, Petitioner has a significant liberty interest in remaining out of custody pursuant to his conditional parole. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi*, 792 F. Supp. 3d at 1032. Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions of release.'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."); *Morrissey*, 408 U.S. at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life."); *Oliveros*, 2025 WL 2677125, at *7 ("Petitioner, who has serious medical conditions, has an interest in remaining in [his] home . . . and monitoring [his] medical conditions out of immigration custody.").

"Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without . . . giving [him] an opportunity to be heard." *Gonzalez Salazar*

12

*v. Casey*, Case No.: 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025); *see also Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025) (finding where, as here, Petitioner "has not received any bond or custody redetermination hearing," the "risk of an erroneous deprivation of liberty is high"). "Civil immigration detention is permissible only to prevent flight or protect against danger to the community." *Pinchi*, 792 F. Supp. 3d at 1035 (citing *Zadvydas*, 533 U.S. at 690). Here, there is no evidence that Petitioner's detention would serve either purpose. "Since DHS's initial determination that Petitioner should be paroled because [he] posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed." *Gonzales Salazar*, 2025 WL 3063629, at *3 (citing *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). To the contrary, Petitioner "has had no encounters with the . . . criminal justice system" and is not a flight risk, as he was arrested at an ICE check-in the day after the immigration judge denied him relief on all counts. (Doc. 1 at 4–5.) *See Ledesma Gonzalez*, 2025 WL 2841574, at *1, 8 (granting habeas petition and ordering bond hearing where ICE re-detained the petitioner the day after an immigration judge denied the petitioner's application for asylum).

Third, Respondents' interest in detaining Petitioner without a hearing is low. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [the petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."); *Pinchi*, 792 F. Supp. 3d at 1036 ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest."). "Therefore, because Respondents detained Petitioner by revoking [his] parole in violation of the Due Process Clause, [his] detention is unlawful." *Gonzalez Salazar*, 2025 WL 3063629, at *5.

/ / /

13

Based on this review of the *Mathews* factors, the Court concludes that due process requires Petitioner to be released from custody and receive a bond hearing before an immigration judge before he can be re-detained.   Respondents argue that release is improper and "the proper remedy would be directing a bond hearing under § 1226(a)." (*Id.* at 16.)  But this argument "misapprehend[s] the purpose of a pre-detention hearing: if Petitioner is detained, he will already have suffered the injury he is now seeking to avoid." *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021); *see also E.A. T.-B. v. Wamsley*, --- F. Supp. 3d ---, 2025 WL 2402130, at *6 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); *Domingo v. Kaiser*, Case No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner[] received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion; that is, his potentially erroneous detention.").

## IV.    **CONCLUSION**[5]

For the foregoing reasons, the Petition is **GRANTED**.  Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of his preexisting conditional parole.

2. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner shall receive notice of the reasons for revocation of his conditional parole and a hearing before an immigration judge to determine whether detention is warranted. Respondents shall bear the burden of establishing, by clear and convincing

---

[5] In light of the disposition herein, the Court declines to address the Petition's remaining grounds for relief.

14

1   evidence,[6] that Petitioner poses a danger to the community or a risk of flight.[7]

2   **IT IS SO ORDERED.**

3   DATE:  November 17, 2025

4

5   HON. RUTH BERMUDEZ MONTENEGRO
    UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18   _____

19

20   [6]  *See Sadeqi v. LaRose*, --- F. Supp. 3d ---, 2025 WL 3154520, at *4 (S.D. Cal. 2025)
     ("Petitioner is entitled to a prompt and individualized bond hearing, at which Respondents
21   must justify her continued detention by a showing of clear and convincing evidence that
     Petitioner would likely flee or pose a danger to the community if released.") (citing *Singh*
22   *v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds by Jennings*,
     583 U.S. 281 (explaining that "the substantial liberty interest at stake" warranted placing
23   the burden on the government to "prove by clear and convincing evidence that [a
     noncitizen] is a flight risk or a danger to the community to justify denial of bond").
24

25   [7]  This relief has been granted in similar matters.  *See Doe v. Becerra*, 787 F. Supp. 3d
26   1083, 1089 (E.D. Cal. 2025); *Pinchi*, 792 F. Supp. 3d at 1038; *Duong v. Kaiser*, --- F. Supp.
     3d ---, 2025 WL 2689266, at *7–10 (N.D. Cal. 2025); *Gonzalez Salazar*, 2025 WL
27   3063629, at *6; *Ledesma Gonzalez*, 2025 WL 2841574, at *9; *Matute v. Wofford*, No. 1:25-
     cv-01206-KES-SKO (HC), 2025 WL 2495767, at *8 (E.D. Cal. Oct. 3, 2025).
28